IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| IMAGINATION PRODUCTS CORPORATION, | ) | |
| | ) | No. 25 C 14280 |
| Plaintiff, | ) | |
| | ) | Judge Robert W. Gettleman |
| v. | ) | |
| | ) | |
| | ) | |
| COMINGHERE DIRECT, OMONT, | ) | |
| ONE HERE DIRECT, SHRIGHTLED, | ) | |
| YUNCHUANGGUANG, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Omont brings this motion to vacate a judgment under Fed. R. Civ. P 60(b)(1). This court entered a default judgment against defendant (Doc. 32) on March 2, 2026. For the reasons below, defendant's motion to vacate the default judgment (Doc. 33) is granted.

Defendant brings its motion under Fed. R. Civ. P 60(b)(1). That rule states that "the court may relieve a party or its legal representative from a final judgment [due to]… mistake, inadvertence, surprise, or excusable neglect." Typically, courts require a party seeking to vacate a final judgment to show: "(1) good cause for the default; (2) quick action to correct it; and (3) a meritorious defense to the complaint." Cracco v. Vitran Exp., Inc., 559 F.3d 625, 630 (7th Cir. 2009).

Defendant argues that it had good cause for its default: it never received notice of the lawsuit against it. Defendant points out that unlike a typical "Schedule A" case, in this case no injunction was entered. Thus, defendant did not receive notice of the lawsuit by virtue of its

Amazon account being restrained. Defendant states that it first realized there was a lawsuit against it when Amazon removed three of its product listings in accordance with the default judgment order entered by this court. At that time, defendant then discovered email notice of the lawsuit in its spam folder. Defendant, a firm based in China, promptly engaged United States based counsel and filed this motion to vacate in less than a month. Defendant argues that this constitutes quick action to correct the default.

The court largely agrees with defendant on these points. In general, a party can demonstrate good cause for its default by showing that "it did not willfully ignore the pending litigation, but, rather, failed to respond to the summons and complaint through inadvertence." Cracco, 559 F.3d at 631. In addition, the Seventh Circuit has articulated that, at least in the Rule 55(c) context, the "good cause" requirement "requires 'good cause' for the judicial action, not 'good cause' for the defendant's error." Sims v. EGA Prods., Inc., 475 F.3d 865, 868 (7th Cir. 2007). The court adds its observation that although courts typically apply the same test, with different levels of stringency, to Rule 55(c) and Rule 60(b) motions, Rule 60(b) does not, at least in its text, require "good cause." Compare Rule 55(c) (providing that "the court may set aside an entry of default for good cause") with Rule 60(b) (listing reasons that permit a court to "relieve a party or its legal representative from a final judgment, order, or proceeding"); see also Jones v. Phipps, 39 F.3d 158, 162 (7th Cir. 1994) (explaining that "while the tests are identical under either Rule 55(c) or Rule 60(b)…the application of the test under Rule 60(b) circumstances…[is] much more limited and stringent").

In any event, the court finds that both species of "good cause" exist here because of the way service was effectuated. Here, plaintiff served a foreign defendant by email under Rule 4(f)(3). Until recently, this was a common practice in so-called "Schedule A" litigation in this

circuit. Since then, the procedural landscape has changed dramatically as courts in this circuit have re-evaluated the requirements of the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters, 20 U.S.T., at 361–73 (the "Hague Convention"). See Kangol LLC v. Hangzhou Chuanyue Silk Imp. & Exp. Co., 177 F.4th 793, 800–01 (7th Cir. 2026) (explaining that where the Hague Convention applies, "it sets out the permitted methods of service and excludes all others," and holding "that the Hague Service Convention prohibits service by email in China."); Santana Tesoro, LLC v. The Partnerships, No. 26 C 1395, 2026 WL 2546903, at *1 (N.D. Ill. Aug. 28, 2026) (explaining that "the Hague Convention governs default judgments when it applies").

The insufficiency of the previous service regime in "Schedule A" cases explains why both species of "good cause" exist here. First, defendant did not have notice of the suit. It is unsurprising that an email from an unknown foreign attorney would end up in defendant's spam folder. Because, as defendant points out, there was no injunction in this case, there was no way for defendant—other than meticulously monitoring its spam folder—to learn about this litigation before the default judgment was entered against it. The court finds that the lack of notice afforded to defendant in these circumstances qualifies as "inadvertence, surprise, or excusable neglect." Rule 60(b)(1). Second, the court finds that there is good cause for judicial action because the service upon defendant, as a formal matter, was insufficient. As Kangol clarified a couple of months after the default judgment was entered here, "the Hague Service Convention prohibits service by email in China." 177 F.4th at 801. The default judgment order awards plaintiff $13,335,764.46 in damages from defendant. The court cannot sustain such a significant award on a default judgment entered against a defendant who was not properly served.

Once defendant learned of the litigation, it took quick action to correct its default.

Defendant never received notice of the suit but realized that something was wrong when Amazon delisted three of its products pursuant to the final judgment order. Defendant then promptly engaged counsel based in the United States to file this motion. Considering the lack of notice and the need to engage foreign counsel, the court finds that defendant's efforts to get a motion filed in under a month constitutes quick action to correct the default.

Finally, defendant has shown that it has a meritorious defense. The Seventh Circuit has articulated that "[a] meritorious defense is not necessarily one which must, beyond a doubt, succeed in defeating a default judgment, but rather one which at least raises a serious question regarding the propriety of a default judgment and which is supported by a developed legal and factual basis." Jones, 39 F.3d at 165. Default judgment was granted on plaintiff's allegation that defendant infringed plaintiff's trade dress, here, the orange color that plaintiff uses for its products. To prove trade-dress infringement, a plaintiff must show that: "(1) its trade dress is inherently distinctive or has acquired secondary meaning; (2) the similarity of defendant's trade dress to that of the plaintiff's creates a likelihood of confusion on the part of consumers; and (3) the plaintiff's trade dress is 'non-functional.'" Incredible Technologies, Inc. v. Virtual Technologies., Inc., 284 F. Supp. 2d 1069, 1083 (N.D. Ill. 2003), aff'd, 400 F.3d 1007 (7th Cir. 2005). Defendant challenges that plaintiff's alleged trade dress is inherently distinctive or has acquired secondary meaning. Having reviewed the evidence submitted, the court finds that the argument articulated by defendant "at least raises a serious question regarding the propriety of a default judgment." Jones, 39 F.3d at 165.

In sum, the court finds that there was good cause for plaintiff's default and there exists good cause for judicial action. The court also finds that plaintiff acted quickly to correct the default and has presented a meritorious defense to plaintiff's allegations. Consequently, the

court grants the motion to vacate the default judgment.

## CONCLUSION

For the above reasons, the court grants the motion to vacate the default judgment (Doc. 33). The final default judgment order (Doc. 31) is vacated as to defendant Omont. Defendant is directed to answer the complaint on or before November 5, 2026.

**ENTER:**

**Robert W. Gettleman**
**United States District Judge**

**DATE: October 16, 2026**